```
1   Michael D. Cok
    COK WHEAT BROWN & McGARRY, PLLP
2   35 North Bozeman Avenue, P. O. Box 1105
    Bozeman, MT 59771-1105
3   (406) 587-4445

4   Attorneys for Plaintiff
```

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### BUTTE DIVISION

| | |
|---|---|
| COUNTRY CLASSIC DAIRIES, INC., d/b/a Darigold Farms,<br><br>Plaintiff,<br><br>vs.<br><br>DARIGOLD, INC., d/b/a WestFarm FOODS, a Washington Corporation,<br>NORTHWEST DAIRY ASSOCIATION, a Washington Corporation,<br><br>Defendants. | No. CV-05-$\mathit{81\text{-}BU\text{-}SEH}$<br><br>COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, DECLARATORY JUDGMENT AND DAMAGES |

COMES NOW the Plaintiff, Country Classic Dairies, Inc. ("Country Classic"), and for its Complaint against the Defendant Darigold, Inc., d/b/a WestFarm Foods, and Defendant Northwest Dairy Association ("NDA"), alleges as follows:

**PARTIES**

1.   Country Classic is a Montana cooperative corporation. Its principal place of business is Bozeman, Montana.

2.   Defendant Darigold, Inc., is a Washington Corporation, doing business as WestFarm Foods. Its principal place of business is Seattle, Washington. It does business in the State of Montana.

3.   Defendant NDA is a Washington cooperative Corporation. Its principal place

of business is Seattle, Washington. It does business in the State of Montana.

## JURISDICTION & VENUE

4. This Court has jurisdiction over the claims contained in this Complaint pursuant to 28 U.S.C. §1331; 28 U.S.C. §1332; 28 U.S.C. §133; 28 U.S.C. 2201; and, 28 U.S.C. 2202.

5. The amount in controversy in this matter exceeds the sum of $75,000.00 exclusive interest and costs.

6. The events or omissions which give rise to the claims in this Complaint occurred in the District of Montana. Venue is in the District of Montana, Butte Division, pursuant to 28 U.S.C. §1391(b), Rules 3.1 and 3.3 of the Rules of Procedure of U.S. District Court for the District of Montana and Mont. Code Ann. § 25-2-122 and Mont. Code Ann. § 25-2-121.

## FACTS COMMON TO ALL CAUSES

7. On March 12, 1940, Defendant Darigold, Inc.'s, d/b/a WestFarm Foods, predecessor in interest, Consolidated Dairy Products Company (hereafter collectively referred to as "WestFarm"), secured federal registration for the mark DARIGOLD in connection with dairy products, such registration identified by Registration No. 375,997. Upon information and belief, this Registration No. 375,997 is cancelled or expired.

8. On December 12, 1961, Darigold, Inc. secured an additional federal registration for the mark DARIGOLD in connection with dairy products, such registration identified by Registration No. 725,101. Upon information and belief, this registration has been renewed.

9. On March 11, 2003, Darigold, Inc. secured a registration for the mark DARIGOLD and Logo containing the words "Since 1918" in connection with milk and other dairy products, such registration identified by Registration No. 2,694,417.

10. On December 15, 1953, WestFarm executed a license to Plaintiff Country Classic's predecessor in interest, Gallatin Cooperative Creamery (hereafter collectively

//

referred to as "Country Classic"), allowing Country Classic to use the DARIGOLD mark on certain dairy products manufactured by Country Classic (the "Trademark License"). A true and correct copy of the Trademark License is attached hereto as Exhibit "1" and incorporated herein by this reference.

11.. On May 31, 1962, WestFarm executed a license to Country Classic allowing Country Classic to use the mark DARIGOLD FARMS as an assumed business name and to "conduct general dairy business" under the mark DARIGOLD FARMS in certain counties in Montana and Wyoming (the "Assumed Business Name License"). A true and correct copy of the Assumed Business Name License is attached hereto as Exhibit "2" and incorporated herein by this reference.

12. In September 2001, the parties executed an Amendment to the Darigold Trademark License Agreement, pursuant to which WestFarm licensed Country Classic to use the federally registered DARIGOLD mark and logo containing the words "Since 1918," identified by Registration No. 2,694,417 (the "Amended Trademark License"). A true and correct copy of the Amended Trademark License is attached hereto as Exhibit "3" and incorporated herein by this reference.

13. The terms of the Trademark License required WestFarm to notify Country Classic in writing of the specific dairy products to which the license for the DARIGOLD mark applied and "the standard of quality for each such dairy product which must be met by [Country Classic] before affixing said trademark thereto."

14. The Assumed Business Name License contained no quality control provisions for products manufactured and/or sold by Country Classic under the mark DARIGOLD, for services offered by Country Classic under the service mark DARIGOLD FARMS, or for general dairy business conducted under the trade name DARIGOLD FARMS.

15. The Amended Trademark License contained no quality control provisions for products manufactured and/or sold by Country Classic under the mark DARIGOLD.

16. WestFarm has never specified the standard of quality Country Classic was

to uphold for any dairy products Country Classic manufactured and/or sold under the mark DARIGOLD, for any services offered by Country Classic under the service mark DARIGOLD FARMS, or for any general dairy business conducted under the trade name DARIGOLD FARMS.

17. Upon information and belief, WestFarm has never visited Country Classic's facilities in order to inspect or otherwise control the quality of goods and/or services offered by Country Classic under the DARIGOLD mark or the DARIGOLD FARMS service mark and trade name.

18. In the fifty plus years since execution of the Trademark License, WestFarm has never notified Country Classic of any quality issues or concerns concerning goods or services offered by Country Classic under the DARIGOLD mark or the DARIGOLD FARMS service mark and trade name.

19. WestFarm is aware that its failure to maintain or exercise control over the quality of goods and services offered by Country Classic under the DARIGOLD mark or the DARIGOLD FARMS service mark and trade name amounts to abandonment of the aforementioned marks.

20. In a letter dated January 2, 2003, WestFarm expressed a desire to eventually amend the Trademark License because WestFarm was concerned that it may not be adequately protected from problems with products produced by Country Classic under the DARIGOLD marks and WestFarm was concerned that it may not have preserved its "trademark rights through adequate standards and monitoring." A true and correct copy of the January 2, 2003 letter is attached hereto as Exhibit "4" and incorporated herein by this reference.

21. Neither the Trademark License, the Assumed Business License, nor the Amended Trademark License were modified to address WestFarm's concerns after WestFarm sent the January 2, 2003 letter.

22. Since execution of the Trademark License in 1953, Country Classic has continuously manufactured and sold dairy products under the mark DARIGOLD throughout

1 Montana and Wyoming.

2  23.  Since at least as early as the execution of the Assumed Business name 3 License in 1962, Country Classic has conducted general dairy business under the trade 4 name and service mark DARIGOLD FARMS and has continued to manufacture and sell 5 dairy products under the mark DARIGOLD throughout Montana and Wyoming and to 6 purchase dairy products from others and to resell such dairy products while conducting its 7 business under the DARIGOLD FARMS service mark and trade name.

8  24.  Since Country Classic's initial use of the DARIGOLD mark and the 9 DARIGOLD FARMS service mark and trade name in connection with its goods and 10 services, Country Classic has invested substantial money and has continuously used, 11 advertised, promoted, and offered its goods and services under the DARIGOLD mark and 12 the DARIGOLD FARMS service mark and trade name to the public through various 13 channels of trade in Montana and Wyoming and has developed substantial and exclusive 14 goodwill therein with the result that consumers have come to know and recognize the 15 DARIGOLD mark and the DARIGOLD FARMS service mark and trade name and to 16 associate the same with Country Classic and/or the goods and services advertised, 17 marketed, distributed, and/or sold to consumers on behalf of Country Classic.

18 **COUNT ONE: DECLARATORY JUDGMENT**

19  25.  Country Classic realleges paragraphs 1 through 24, and further alleges that:

20  26.  On August 5, 2005, WestFarm sent a letter to Country Classic purporting to 21 terminate, effective January 1, 2006, the Trademark License, the Assumed Business 22 Name License, the Amended Trademark License, and an additional marketing agreement 23 executed by the parties. A true and correct copy of the August 5, 2005 letter is attached 24 hereto as Exhibit "5" and incorporated herein by this reference.

25  27.  In its August 5, 2005 Letter, WestFarm demanded that Country Classic cease 26 all "use of the Darigold brand on all packaging, communications, point of sale, signs, 27 trucks, etc. as of January 1, 2006." A subsequent letter dated October 28, 2005, extended 28 this time until May 7, 2006. A true and correct copy of the October 28, 2005 letter is

1 attached hereto as Exhibit "6" and incorporated herein by this reference.

2 28. Therefore, an actual controversy exists regarding the parties' respective rights in the aforementioned marks.

4 29. Since licensing the DARIGOLD marks to Country Classic, WestFarm has failed to exercise or maintain any quality control over Country Classic or the dairy products manufactured and/or sold by Country Classic under the DARIGOLD marks.

7 30. Since WestFarm has failed to exercise or maintain any quality control over Country Classic or the dairy products manufactured and/or sold by Country Classic under the DARIGOLD marks, the Trademark License and Amended Trademark License have become "naked" licenses.

11 31. The DARIGOLD marks have ceased to function as a symbol of quality and as a controlled source associated with WestFarm.

13 32. As such, WestFarm has abandoned all rights in the DARIGOLD marks in Montana and Wyoming and any other states in which Country Classic has manufactured and/or sold dairy products under the DARIGOLD marks and which WestFarm failed to maintain or exercise any quality control over goods offered and/or sold by Country Classic under the DARIGOLD marks.

18 WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, Country Classic respectfully requests the Court to declare that, as a result of WestFarm's abandonment of the DARIGOLD marks in Montana and Wyoming and those other states in which Country Classic has manufactured and/or sold goods under the DARIGOLD marks without any quality control from WestFarm, Country Classic has the right to continue to manufacture and sell goods under the DARIGOLD marks in such states.

**COUNT TWO: DECLARATORY JUDGMENT**

25 33. Country Classic realleges paragraphs 1 through 32, and further alleges that:

26 34. Since licensing the service mark and trade name DARIGOLD FARMS to Country Classic, WestFarm has failed to exercise or maintain any quality control over Country Classic, the services offered or provided by Country Classic under the service

1 mark and trade name DARIGOLD FARMS, or the general dairy business conducted by
2 Country Classic under the service mark and trade name DARIGOLD FARMS.

3     35. Since WestFarm has failed to exercise or maintain any quality control over
4 Country Classic, the service offered or provided by Country Classic under the service make
5 and trade named DARIGOLD FARMS, or the general dairy business conducted by Country
6 Classic under the service mark and trade name DARIGOLD farms, the Assumed Business
7 Name License has become a "naked" license.

8     36. The DARIGOLD FARMS trade name has ceased to function as a symbol of
9 quality and as a controlled source associated with WestFarm.

10     37. As such, WestFarm has abandoned all rights in the service mark and trade
11 name DARIGOLD FARMS in Montana and Wyoming and any other states in which
12 Country Classic has offered or provided services or conducted general dairy business
13 under the DARIGOLD FARMS service mark and trade name and which WestFarm failed
14 to maintain or exercise any quality control over the general dairy business conducted or
15 services offered or provided by Country Classic under the DARIGOLD FARMS service
16 mark and trade name.

17     WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, Country Classic
18 respectfully requests the Court to declare that, as a result of WestFarm's abandonment of
19 the DARIGOLD FARMS service mark and trade name in Montana and Wyoming and those
20 other states in which Country Classic has conducted general dairy business or offered or
21 provided services under the DARIGOLD FARMS service mark and trade name without any
22 quality control from westFarm, Country Classic has the right to continue to conduct general
23 dairy business and provide services under the DARIGOLD FARMS service mark and trade
24 name in such states.

25 **COUNT THREE: DECLARATORY JUDGMENT**

26     38. Country Classic realleges paragraphs 1 through 37, and further alleges that:
27     39. Upon information and belief, WestFarm maintains exclusive use of the
28 DARIGOLD marks and the DARIGOLD trade name in the state of Washington.

40. WestFarm has abandoned its rights in the DARIGOLD marks and the DARIGOLD FARMS trade name in Montana and Wyoming and in those other states in which WestFarm has failed to maintain or exercise quality control over Country Classic's use of the DARIGOLD marks and the DARIGOLD FARMS service mark and trade name.

41. Through continuous and exclusive use of the DARIGOLD marks and the DARIGOLD FARMS service mark and trade name in Montana and Wyoming, Country Classic has acquired rights in the DARIGOLD marks and the DARIGOLD FARMS service mark and trade name irrespective of the "naked" licenses ranted to Country Classic by WestFarm.

WHEREFORE, Country Classic prays for an Order declaring that WestFarm has abandoned its rights in the DARIGOLD marks and the DARIGOLD FARMS service mark and trade name in Montana and Wyoming and further declaring that Country Classic is entitled to exclusive use of the DARIGOLD marks and the DARIGOLD FARMS service mark and trade name in Montana and Wyoming and that WestFarm is only entitled to use the DARIGOLD marks and the DARIGOLD trade name in the State of Washington.

## COUNT FOUR: CANCELLATION OF WESTFARM'S FEDERAL REGISTRATIONS OF THE DARIGOLD MARKS

42. Country Classic realleges paragraphs 1 through 41, and further alleges that:

43. Since WestFarm has abandoned the DARIGOLD marks and since the DARIGOLD marks have ceased to function as a symbol of quality and as a controlled source associated with WestFarm, Country Classic is entitled to an Order directing the Director of Patents and Trademarks to cancel WestFarm's federal registrations of the DARIGOLD marks.

WHEREFORE, pursuant to 15 U.S.C. §§ 1064 and 1067, Country Classic prays for an Order directing the Director of Patents and Trademarks to cancel WestFarm's federal registrations of the DARIGOLD marks, such registrations identified by Registration Nos. 725,101 and 2,694,417.

## COUNT FIVE: IN THE ALTERNATIVE TO COUNT FOUR:

## CONCURRENT USE REGISTRATION

44. Country Classic realleges paragraphs 1 through 43, and further alleges that:

45. WestFarm has abandoned its rights in the DARIGOLD marks and the DARIGOLD FARMS trade name in Montana and Wyoming and in those other states in which WestFarm has failed to maintain or exercise quality control over Country Classic's use of the DARIGOLD marks and the DARIGOLD FARMS service mark and trade name.

46. Through lawful continuous and exclusive use of the DARIGOLD marks and the DARIGOLD FARMS service mark and trade name in Montana and Wyoming, Country Classic has acquired rights in the DARIGOLD marks and the DARIGOLD FARMS service mark and trade name irrespective of the "naked" licenses ranted to Country Classic by WestFarm.

47. Pursuant to 15 U.S.C. §§ 1052(d), Country Classic is entitled to a concurrent use registration of the DARIGOLD marks.

WHEREFORE, in the alternative to Count Four, Country Classic prays for an order directing the Director of Patents and Trademarks, pursuant to 15 U.S.C. §§ 1052(d), to issue concurrent registrations of the DARIGOLD marks to Country Classic for the geographically exclusive rights therein for Montana and Wyoming and to further geographically restrict West Farm's rights of the aforementioned concurrent registrations to the State of Washington.

## COUNT SIX: BREACH OF FIDUCIARY DUTY

48. Country Classic realleges paragraphs 1 through 47, and further alleges that:

49. NDA owns approximately ninety-three percent (93%) of the stock of Darigold, Inc. Country Classic Dairies, Inc., owns the remaining stock.

50. WestFarm Foods is a closed corporation within the meaning of Montana law.

51. The shareholders of a closed corporation and the corporation itself owe to each other a strict good faith duty not to act out of avarice, expediency or self interest in derogation of their duty of loyalty to the other stockholders.

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, DECLARATORY
JUDGMENT & DAMAGES                                                              Page 9

1   52.   As a minority stockholder of Darigold, Inc., Country Classic is entitled to be dealt with in utmost good faith and loyalty by the majority shareholder Northwest Dairymen's Association and by WestFarm.

53.   In threatening to cancel the trademark and assumed business name licenses of Country Classic, Northwest Dairymens Association and Darigold, Inc., d/b/a WestFarm Foods breached their duty and are rendered liable for any resulting harm to Country Classic.

WHEREFORE, Plaintiff prays for an award of compensatory damages for breach of fiduciary duty against the Defendants jointly and severally.

## COUNT SEVEN: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

54.   Country Classic realleges paragraphs 1 through 53, and further alleges that:

55.   The contractual relationships described above between Country Classics and its predecessors and WestFarm and its predecessors, over a period of more than fifty (50) years, gave rise to a covenant of good faith and fair dealing under Montana law.

56.   Defendant WestFarm will be in breach of its covenant of good faith and fair dealing in the event that Defendants interferes with Plaintiff's use of the trademark "Darigold" and/or assumed business name "Darigold Farms".

57.   As a result of the breach of the covenant of good faith and fair dealing, the Plaintiff will suffer damage.

WHEREFORE, Plaintiff prays for an award of compensatory damages against Defendant WestFarm Foods for breach of the covenant of good faith and fair dealing.

## COUNT EIGHT: INJUNCTIVE RELIEF

58.   Country Classic realleges paragraphs 1 through 57 and further alleges that

59.   Defendants threaten to interfere with Plaintiff's use of the trademark "Darigold" and the assumed business name "Darigold Farms", which interference would result in the interruption of over fifty (50) years of business by the Plaintiff operating under the trademark "Darigold" and therefore would result in irreparable injury to the Plaintiff.

60.   Plaintiff's use of the trademark "Darigold" and business name "Darigold

Farms" during the pendency of this action will result in no injury to the Defendants but will merely maintain the status quo until the status of the trademark and business name are resolved.

61. Plaintiff is entitled to preliminary and permanent injunctive relief prohibiting the Defendants from interfering with Plaintiff's use of the "Darigold" trademark and/or Plaintiff's use of the assumed business name "Darigold Farms".

62. The Court has authority to grant Plaintiff injunctive relief pursuant to Fed. R. Civ. P. 62.

WHEREFORE, Plaintiff requests that this Court issue preliminary and permanent injunctions against WestFarm Foods preventing it from interfering with the Plaintiff's use of the DARIGOLD trademark and business name DARIGOLD FOODS.

## COUNT NINE:  OTHER RELIEF

63. Country Classic realleges paragraphs 1 through 62 and further alleges that

64. In addition to the relief previously requests, Plaintiff requests an award of costs, interest and attorney's fees.

DATED this 1st day of December, 2005.

COK WHEAT BROWN & McGARRY, PLLP

BY: _____
Michael D. Cok
35 North Bozeman Avenue, P. O. Box 1105
Bozeman, Montana 59771-1105
Attorneys for Plaintiff Country Classic Dairies, Inc.

# DARIGOLD

## Trade-mark License

THIS AGREEMENT made and entered into this __15th__ day of __December__, 19__53__, by and between CONSOLIDATED DAIRY PRODUCTS COMPANY, a corporation of the State of Washington, with offices and principal place of business at 635 Elliott Avenue West, Seattle, Washington (hereinafter called "Consolidated"), and __GALLATIN CO-OPERATIVE CREAMERY__

a corporation of the State of __MONTANA__, and having its offices and principal place of business in __BOZEMAN, MONTANA__ (hereinafter called "Association"):

WITNESSETH:

WHEREAS, Consolidated is the owner of a certain trademark and label for dairy products known and described as "Darigold", evidenced by certificate of registration of the United States Patent Office No. 375,997, dated March 12, 1940; and

WHEREAS, a portion of the dairy products sold by Consolidated under this trademark is manufactured by the Association in accordance with certain standards as to quality prescribed by Consolidated and subject to inspection by Consolidated; and

WHEREAS, there is a certain intercorporate relationship existing between Consolidated and Association, and also a selling arrangement between said corporations arising out of a Marketing Agreement; and

WHEREAS, in view of the above-mentioned relationships, it will be to the advantage of both parties to permit Association to sell certain dairy products under the above-mentioned trademark in certain local territory defined pursuant to the provisions of said Marketing Agreement; and

WHEREAS, it is deemed desirable to cover by this instrument the terms and conditions governing such sales by Association;

NOW THEREFORE, in consideration of the premises and of the sum of Ten Dollars ($10.00) in hand paid to Consolidated by Association, and the mutual obligations undertaken and released and other good and valuable consideration, receipt of which is hereby acknowledged, it is mutually agreed as follows:

1. Consolidated hereby grants to Association during the term hereof the right to use the above-mentioned trademark on certain dairy products manufactured by Association and sold by Consolidated and certain dairy products manufactured by and sold by Association in the said local territory, subject strictly to the provisions of Paragraph 2 and 3 hereof.

-1-


EXHIBIT "I"

2. The dairy products upon which Association shall use the above-mentioned trademark shall not only comply with the laws respecting quality and labeling of the United States and of the state and municipality where such dairy products are manufactured and/or sold, but shall also meet the standard of quality which shall be prescribed by Consolidated and the labeling requirements prescribed by Consolidated. To this end Consolidated shall notify Association, in writing, the specific dairy products hereby licensed and the standard of quality for each such dairy product which must be met by Association before affixing said trademark thereto; and Consolidated shall likewise prescribe, in writing, the labeling to be carried by such licensed products.

3. Association grants to Consolidated the right, and Consolidated hereby agrees to inspect and to supervise the manufacture by Association of any dairy products on which the said trademark is affixed whether for purposes of sale by Consolidated or for direct sale by Association under the provisions of this agreement.

4. This license shall be non-assignable by Association.

5. This agreement shall be terminated:

   (a) At the will of Consolidated, or

   (b) Upon violation of any of the provisions of this agreement, or

   (c) Upon termination of the above-mentioned intercorporate relationship between Consolidated and Association, or

   (d) Upon termination of the above-mentioned Marketing Agreement.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed in their behalf by proper officers of the respective companies, and affixed their corporate seals, on the day and year first hereinabove written.

(CORPORATE SEAL)  
ATTEST _____  
          Secretary

CONSOLIDATED DAIRY PRODUCTS COMPANY  
BY _____  
       President

(CORPORATE SEAL)  
ATTEST _M. M. Westlake_____  
          Secretary

_____ Association  
_L. J. Christie_____  
       President

COUNTY OF KING )
: ss
STATE OF WASHINGTON )

On this 15-74 day of DECEMBER, 1953 before me personally came R. S. WALTZ to me known, who, being by me duly sworn, did depose and say that he resides in Seattle, Washington that he is the president of Consolidated Dairy Products Company the corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

(SEAL)

*Harry J. Schainikow*
NOTARY PUBLIC

COUNTY OF *Gallatin* )
: ss
STATE OF *Montana* )

On this 21st day of *December, 1953* before me personally came *L. G. Christie* to me known, who, being by me duly sworn, did depose and say that he resides in *Bozeman, Montana* that he is the President of *Gallatin Co-Operative Creamery*, the corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

(SEAL)

*Evelyn J. Arnold*
NOTARY PUBLIC

DARIGOLD FARMS

ASSUMED BUSINESS NAME LICENSE

THIS AGREEMENT made and entered into this 31st day of May, 1962, by and between CONSOLIDATED DAIRY PRODUCTS COMPANY, a corporation of the State of Washington, with offices and principal place of business at 635 Elliott Avenue West, Seattle, Washington, hereinafter called "Consolidated", and Gallatin Cooperative Creamery, a corporation of the State of Montana, hereinafter called "Association":

WITNESSETH:

WHEREAS, there is a certain intercorporate relationship existing between Consolidated and Association, and also a selling arrangment between said corporations arising out of a Marketing Agreement; and

WHEREAS, Consolidated is the owner of a certain tradename for dairy products known and described as "DARIGOLD", the name having been used by Consolidated and its predecessor in title since on or about December 17, 1921, during which time "DARIGOLD" has acquired an eminent reputation as the distributor of high quality dairy products; and

WHEREAS, Consolidated is the owner of a certain trademark and label for dairy products known and described as "DARIGOLD" and has, under date of December 21, 1953, licensed Association to use said trademark on certain dairy products; and

WHEREAS, Consolidated owns and has used the assumed business name "DARIGOLD FARMS" since June 1, 1952; and

WHEREAS, Association now desires to conduct a general dairy business under the firm name and style of "DARIGOLD FARMS":

NOW, THEREFORE, in consideration of the premises and of the sum of Ten Dollars ($10.00) in hand paid to Consolidated by Association, and the mutual obligations undertaken and released, and other good and valuable consideration receipt of which is hereby acknowledged, it is mutually agreed as follows:

1. Consolidated hereby grants to Association the right to use as an assumed business name, and to conduct a general dairy business under the firm name and style of "DARIGOLD FARMS" in Gallatin, Park, Sweet Grass, Stillwater, Yellowstone, Musselshell, Petroleum, Golden Valley, Wheatland, Fergus, Judith Basin, Meagher, Broadwater, Jefferson, Silver Bow, Deer Lodge, Madison, and the southern portion of Lewis and Clark counties in the State of Montana; Treasure, Carbon and Rosebud counties in Eastern Montana; and Park, Teton and Big Horn counties in Northern Wyoming.

2. Association agrees to indemnify and save harmless said Consolidated against any and all claims for liability or damages by any person whomsoever arising from the exercise of the license herein granted.

- 1 -

EXHIBIT "2"

3. This agreement shall be terminated:

    (a) at the will of Consolidated; or

    (b) upon violation of any of the provisions of the marketing agreement between Association and Consolidated; or

    (c) upon termination of the above mentioned marketing agreement; or

    (d) upon termination of the above mentioned intercorporate relationship between Consolidated and Association.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed in their behalf by proper officers of the respective companies, and affixed their corporation seals on the day and year first hereinabove written.

(CORPORATE SEAL)

CONSOLIDATED DAIRY PRODUCTS COMPANY

By _____
                President

ATTEST:

By _____
      Secretary

GALLATIN CO-OPERATIVE CREAMERY

(CORPORATE SEAL)

By _____
                President

ATTEST:

By X _____